AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

_____ **DISTRICT OF** MASSACHUSETTS _____

UNITED STATES OF AMERICA

### V.

JOHN MELO and GREGORY WARREN

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 03 - M00089-LPC

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about May 2003 through July 22, 2003 in Bristol county, in the District of Massachusetts defendant(s) did, (Track Statutory Language of Offense)

knowingly and intentionally conspire to distribute, and to possess with intent to distribute, five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a schedule I controlled substance,

in violation of Title 21 United States Code, Section(s) 846 & 841(a)(1)

I further state that I am a(n) FBI Special Federal Officer and that this complaint is based on the following
Official Title

facts:

See Affidavit of Michael Kozak attached hereto and incorporated herein

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

Signature of Complainant

Sworn to before me and subscribed in my presence,

07-23-2003                                    at                    Boston, Massachusetts
Date                                                                    City and State

Lawrence P. Cohen
United States Magistrate Judge
Name & Title of Judicial Officer                                  Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

MICHAEL H. KOZAK, being duly sworn, deposes and states as follows:

## I.    INTRODUCTION

1.    I am a Special Federal Officer deputized by the Federal Bureau of Investigation ("FBI") pursuant to 21 U.S.C. § 878.    I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2.    From May 1977 to the present, I have been an officer of the Massachusetts Parole Board assigned to the Warrant and Investigation Unit.    My responsibilities in that Unit include investigating criminal activity of all types by parolees.    Since 1991, I have also been a member of the FBI Violent Fugitive Task Force.    My primary responsibilities as an FBI Task Force member are the apprehension of federal and state fugitives and, for the past two years, the investigation of narcotics trafficking and other illegal activity in eastern Massachusetts.

3.    In the course of my work I have utilized various investigatory tools and techniques, including confidential informants, cooperating witnesses, physical surveillance, search warrants, telephone toll analysis, and witness interviews.    I am familiar with the benefits and limitations of these techniques. I previously have submitted affidavits in conjunction with applications for search warrants in various courts of the Commonwealth of Massachusetts.

4.    Based upon my experience and my consultations with

other trained and experienced law enforcement agents, I am
familiar with narcotics traffickers' methods of operation,
including the distribution, storage, and transportation of
narcotics and the collection of money that constitutes the
proceeds of narcotics trafficking activities.  Among other
things, I am familiar with:  the manner in which narcotics
traffickers use telephones, coded or slang-filled telephone
conversations, and other means to facilitate their illegal
activities; the vernacular of users and distributors of
controlled substances and the methods by which such persons
attempt to disguise the subjects of their conversations and
operations; and the typical price, packaging, and method of sale
of narcotics in eastern Massachusetts.

     5.   I submit this affidavit in support of a complaint
charging JOHN MELO ("MELO") and GREGORY WARREN ("WARREN") with
conspiracy to distribute, and to possess with intent to
distribute, five kilograms or more of a mixture or substance
containing a detectable amount of cocaine, a Schedule II
controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1)
& 841(b)(1)(A).

     6.   The information contained in this affidavit is based on
my own observations or has been related to me by law enforcement
officers involved in the investigation.  This affidavit does not
set forth all the facts developed during the course of this
investigation.  Rather, it sets forth only those facts that I

believe are necessary and sufficient to establish probable cause
to charge  with violating 21 U.S.C. §§ 846, 841(a)(1) &
841(b)(1)(B).

7.   Pursuant to Orders issued on May 27, 2003 and June 27,
2003, respectively, by the Honorable Nancy Gertner of the United
States District Court for the District of Massachusetts, the
government has intercepted telephone calls to and from a Verizon
wireless cell phone subscribed to, and used by, JOHN MELO
(hereinafter the "Melo Cell Phone").  I personally have listened
to, and have reviewed preliminary summaries of, all of those
calls, and I believe, based on my training and experience, that
hundreds of them are pertinent (i.e. criminal in nature).  Some
of those calls are summarized below.  My summaries of the calls
are based on preliminary summaries and/or preliminary transcripts
prepared by the monitors who listened to the calls as they
occurred; consequently, the summaries may contain errors and
omissions.  My interpretation of coded language in the calls is
set forth (usually inside parentheses or brackets) wherever code
words appear.

8.   I believe the intercepted calls, along with
contemporaneous surveillance, reveal that MELO regularly obtains
kilogram quantities of cocaine from WARREN and sells them to
others in ounce and eight ball quantities.  In particular, I
believe the intercepted calls and other evidence detailed below
reveal that MELO purchased a kilogram of cocaine from WARREN on

June 22, 2003, two kilograms of cocaine on July 11, 2003, and another two kilograms of cocaine on July 22, 3003.

9.    On June 21, 2003, at approximately 8:04 p.m., MELO received a call on the Melo Cell Phone from 401-255-2862, which is subscribed to by JOHN WARREN, and spoke to a man he addressed as "GREG." As explained below, "GREG" has been identified as GREGORY WARREN. MELO said, "Tell me some good news." WARREN replied, "I might be on point again. . . . with those things," indicating that he might have drugs to sell. MELO said, "put me down for them," indicating that he wanted to buy some. MELO then asked, "What's up with the other things," indicating a different type of drug. WARREN asked, "the big ones?" which I believe meant kilograms of cocaine. MELO confirmed and said, "Go ahead, grab me a couple," indicating that he wanted to buy two kilograms. WARREN asked, "A couple?" MELO replied, "Yeah, put me down for two, or one, whatever. We'll start off with one tomorrow." WARREN warned MELO that it was "costy," i.e. expensive. MELO said, "It's a little bit, what, different than before, huh? Price wise?" indicating that MELO has purchased kilograms of cocaine from WARREN in the past. WARREN said, "It's not the same guy" (i.e. supplier). MELO asked, "What's the price?" WARREN replied, "I think it's two six five" (i.e. $26,500 per kilogram, which is within the typical price range for kilograms of cocaine in this area). MELO said, "Well, make a call, see what you can do." WARREN said, "I know that I can get

one [i.e. kilogram], there is one over there already." MELO said, "Go ahead, go grab it. . . . We'll do it right now," indicating that MELO was prepared to take delivery right away. WARREN said, "It might not be tonight, I think it's probably going to be tomorrow." MELO said, "I tell you, GREG, work on it as soon as possible, because I'm, like, ready." WARREN said, "I'm on it. I've already got it, it's already in my possession."

10. The following morning -- June 22, 2003, at approximately 11:21 a.m. -- WARREN called the Melo Cell Phone and spoke to MELO. WARREN asked if MELO was "ready to rock and roll" (i.e. do the drug transaction). MELO said he was, and WARREN said he would be there (i.e. at MELO's location) in a couple of hours. At approximately 1:13 p.m., WARREN called the Melo Cell Phone, and the two spoke again. WARREN said he had arrived, and MELO said he would be out in a second.

11. Approximately five minutes later, surveillance agents stationed outside MELO's parents' house at 148 Davis Road in Westport observed a maroon Mercury Grand Marquis pull into the driveway. The Grand Marquis was registered to JOHN WARREN, 59 Sprague Avenue, Cranston, Rhode Island, which is identical to the subscriber information for the phone used by WARREN. MELO's 1997 Jeep Cherokee was also observed in the driveway. During the next 15 minutes or so, surveillance agents drove by 148 Davis Road repeatedly. On the first pass, they saw MELO and another man in his 30's standing in driveway talking; on later passes, they saw

both the Grand Marquis and MELO's jeep still parked in the
driveway, but no one was outside, indicating that both men were
inside the house. At approximately 1:36 p.m., the Grand Marquis
departed Davis Road and was followed by the agents back to
Cranston, Rhode Island. The agents later saw the Grand Marquis
parked at 59 Sprague Avenue in Cranston alongside another car
registered to JOHN WARREN at the same address. A records check
reveals that 59 Sprague Avenue in Cranston, Rhode Island is also
the address of GREGORY WARREN, a 36 year-old man with a record of
convictions for drug possession, larceny, assault, and breaking
and entering.

    12.  In light of the phone calls that preceded WARREN's
arrival at 148 Davis Street and WARREN's brief visit to the house
before returning to Rhode Island, the agents believe that WARREN
delivered a kilogram of cocaine to MELO at that location.

    13.  On July 3, 2003, at approximately 5:44 p.m., MELO
received another call from WARREN. MELO asked, "What's up,
anything?" WARREN said, "Nothing, I'm waiting. This weekend we
should be on for sure with the big guys," indicating that over
the weekend they should be able to purchase cocaine from WARREN's
kilogram-level suppliers. MELO asked, "All right, how about the
little green boys?" probably referring to some other type of
drug.  WARREN said, "The little green boys are on their way!  I
just don't know when. . . .  I'm rocking and rolling, believe me,
I'm working on it. As soon as something comes through, you're

going to be the first man I'm calling." MELO said, "Listen, put
me down for two [i.e. two kilograms of cocaine]. Make sure."
WARREN said, "I got you down for two. . . . I'll give you a call
as soon as I get."

14. On July 7, 2003, at approximately 3:36 p.m., MELO
called WARREN and said, "Hey man, what's going on, I'm getting
calls all over the place [i.e. for cocaine], people are wondering
how you're doing." WARREN said, "I'm waiting, I'm still waiting.
It'll be tomorrow." MELO asked on which ones, and WARREN said,
"on the [UI] big one [i.e. the kilogram of cocaine]. . . . I'm
waiting for the little ones [i.e. a different drug], they're on
route." MELO said, "No, those big ones. I'm dying [i.e. running
out of cocaine] like. . . ." WARREN asked, "Are you ready?"
(i.e. to buy a kilogram of cocaine). MELO said, "Yeah, I'm like,
I'm holding on by the skin of my teeth, with the, I got maybe a
week left [i.e. a week's supply of cocaine left], you know what I
mean?" WARREN said, "I'll do some hustling, I'll do some
bustling . . . I have to go way back, digging, digging and back
into the files and see what I can do." MELO said, "them two,
them two, would be good for a, you know, a month or so, and then
do another two," meaning that two kilograms would last MELO a
month and then he would need another two. (MELO's statement
is consistent with other calls intercepted during the course of
the investigation which show that MELO distributes approximately
one kilogram of cocaine every two weeks.) WARREN said, "All

right, I'm on it, as soon as I wrap my fingers around something, you're the first man."

15.  On July 10, 2003, at 3:41 p.m., MELO and WARREN spoke again.  WARREN asked MELO, "Are you ready to rock and roll?" (i.e. do the drug transaction).  MELO confirmed, and WARREN said, "All right, good, I'm going to, uh, check something out."  MELO asked, "What, the big ones [i.e. kilograms of cocaine] or the little ones?"  WARREN said, "the big ones."  MELO asked if it looked like it would happen that day, and WARREN said, "Yeah, I don't see why not [UI] . . . if everything's right. . . . Of course, I dealt with this guy before, I mean he's a cheap Jewish, cheap Jewish prick, but . . . other than that, business is great. . . . I'll give you a holler when I know more."

16.  Later that night, at approximately 10:04 p.m., WARREN called MELO and said, "I'm still waiting for this guy to call, it's probably going to be tomorrow."  WARREN then said, "I got some greenage [i.e. probably meaning marijuana], you want me to show you some of that?"  MELO said, "Oh, no, I need a couple of them big boys" (i.e. kilograms of cocaine).  WARREN said, "All right, I got them coming."  MELO said, "As soon as possible."  WARREN said, "Tomorrow, probably. . . .  Yeah, it was supposed to be today, but I just want to make sure, you know, everything was on point. . . .  All right, I'll give you a holler as soon as I, soon as I get a, soon as I'm checking them out."

17.  The following afternoon -- July 11, 2003 at

approximately 2:19 p.m. -- WARREN called MELO and said, "I'm
almost all ready.  I'm just calling you, I think I want to use
the Jeep" (indicating MELO's Jeep Cherokee, which, as described
below, has a sophisticated hidden compartment or "hide" behind
the rear seat).  MELO agreed, and WARREN said he would come pick
it up.  MELO said he was planning to go camping at 5:30 p.m., and
WARREN said, "Ooh, I don't know if I'm going to be able to get it
[i.e. the drug deal] done before then."  MELO asked him to try
and said he would be only a half hour away and would come back
from the campsite to do the deal if necessary.  WARREN said, "all
right, let me call those guys [i.e. WARREN's suppliers] and see
when I can go grab it.  And I'll come down there and grab that
[i.e. the jeep].  And then just make it a whole package" (i.e. do
everything at once).  MELO asked, "Same thing as last time, same
kind?" probably referring back to the kilogram he had purchased
from WARREN two weeks earlier.  WARREN said, "Uh, no.  I think
it's better than that. . . .  Last time was brutal."  MELO said,
"Yeah, no, it went [i.e. the cocaine was sold to customers
without problem] . . . .  I just couldn't . . . .  I couldn't
play with it as much, you know," probably meaning he could not
cut it as much as he could have cut purer cocaine.

    18.  Approximately 90 minutes later, at approximately 3:50
p.m., WARREN called MELO and said, ". . . you're going to be
happy with the quality anyways, I took a look at it.  But, um, I
probably won't be able to get it until about 5:00 p.m. or

something, so.  Think it's best I come get the jeep now."  MELO
said that was okay, then remembered that he would need the jeep
to tow something for his camping trip.  MELO asked, "So.  How
many of them things [i.e. kilograms of cocaine] you, how many
them things you doing?"  WARREN said, "Two."  MELO asked, "This
definitely going to happen?"  WARREN confirmed and added, "You
know me.  I laugh and I joke, but I don't fuck around."  MELO
said, "No, I know.  I guess not.  Unless you want to do a one-
shot deal.  Just come right down here real quick with it. . . .
Put it together and bring it down.  Nice and quiet."  WARREN
said, "All right."  MELO asked, "You're not going be that
nervous, are you?"  WARREN said he would not be.  MELO said he
would wait until 5:30 p.m. and then take off camping but would
come back if he had to.

     19.  At approximately 8:15 p.m., MELO called WARREN and
said, "Hey GREG.  Hey, tell me, you didn't see that guy who was
getting busted.  Ah, tell me that wasn't a green car."  WARREN
said he had not really noticed.  MELO indicated he thought it
might have been someone he knew getting arrested in his green
Mustang convertible.  WARREN then said, "All right?  So I'll give
you a holler tomorrow, baby."  MELO said, "Yeah.  Hey, work on a
couple more for tomorrow if you can."  WARREN said, "I'll do it.
I'll do the best I can."  I believe this conversation indicates
that MELO and WARREN met somewhere to consummate the two-kilogram
drug deal and that both men saw someone being arrested as they

were driving away in their respective cars.  Moreover, MELO's

request that WARREN "work on a couple more for tomorrow" suggests

that he was pleased with the drugs he received and wanted WARREN

to obtain another two kilograms of cocaine for him the following

day.  Calls received in recent days appear to confirm this.

20.  On July 15, 2003, at approximately 7:33 p.m., MELO

received a call from WARREN and said to WARREN, "Tell me the good

word, bro."  WARREN replied, "Oh yeah, I'll probably have a few

more of them [i.e. kilograms of cocaine] in a couple of days."

MELO said, "All right, put me down for a couple," indicating that

he wanted to buy two kilograms.  They discussed other matters

briefly.  MELO then said, "So, ah, I'll just wait on, I'll just

wait on you, I'm all set."  WARREN said, "Yeah, couple, ah, I

heard the word 'Thursday,' Thursday's the day the other guy is

coming around," probably meaning that WARREN heard that the

kilogram-level cocaine supplier would be coming around again on

Thursday (i.e. July 17, 2003).  MELO told WARREN to keep in

contact.

21.  On July 18, 2003, at approximately 6:08 p.m., MELO

received a call from WARREN and asked WARREN, "What's happening?"

WARREN said, "Not much.  I just, I call you because I, I want to

know what you can do with some, ah, green [i.e. marijuana].

Anything?"  MELO said, "Nothing."  WARREN said, "I've been

dumping [i.e. selling] a lot of it.  Dumped like almost [all]."

WARREN said, "Yeah, the number, the number's right.  Seven and a

half," indicating a price of $750 per pound, which is within the
typical price range for pounds of ordinary marijuana in this
area.  MELO said, "I can't do nothing.  Give me a call back with
that other thing, though," which I believe was a reference to
kilograms of cocaine.  WARREN said, "All right.  Pretty soon.
Any day now.  I expected today but."  MELO acknowledged.

22.  On July 21, 2003, at approximately 8:56 p.m., MELO
spoke to WARREN and said, "GREGORY, my man. . . .  What's
happening, how's things looking?"  WARREN said, "Looking good,
looking real good. . . .  Yeah, I'm waiting, any minute now we'll
have them two things" (i.e. kilograms of cocaine).  MELO replied,
"All right, beautiful, I'm just checking in with you, I'm not out
to fucking bug you. . . .  But I got for, bought, like, I got
enough work going for the guys for about three or four weeks,
anyway," which I believe meant that MELO had enough cocaine to
supply his runners for only three or four more weeks.  WARREN
said, "I'm in shape for any minute, any second, any day," meaning
that kilograms of cocaine would be available imminently.  MELO
said, "You know I don't need no fucking, you know, I don't need
no fucking day's notice or nothing like that, you just call me,
uh, 20 minutes, half hour, bing, bang, boom.  You know what I
mean."  WARREN replied, "You're the man, that's what I love about
you."  MELO said, "OK, I don't need no type of notice, I'm not
going to be leaving town or nothing.  I'm on, you know, I'm just
waiting on you, buddy."  WARREN said, "I'll be, maybe I'll come

down and get the Jeep this time," indicating that he wanted to
use MELO's Jeep to pick up and deliver the drugs.  MELO agreed.

    23.  On July 22, 2003, at approximately 4:38 p.m., WARREN
called MELO and said, "Jeep ready to go?"  MELO said, "Yeah,
you?"  WARREN said, "Yeah."  MELO said, "All right!"  WARREN
said, "I'll come get it after rush hour."  MELO asked, "Uh, after
rush hour, what time you thinking about, do I got until seven?"
WARREN said that was fine, and MELO said, "I'll be at my parents'
at quarter past seven."  WARREN told MELO to call him when he was
ready.

    24.  At approximately 7:07 p.m. that evening, MELO called
WARREN and said, "What's happening, GREG?"  WARREN said, "Ready
to rumble."  MELO asked, "So what you going to do, come down here
and grab my vehicle?"  WARREN confirmed, and MELO said, "All
right, is the definitely going to go down?"  WARREN said, "Oh, of
course."  WARREN then said, "So I'll be there in at least, at
least about half an hour."  MELO said, "All right, give me a call
when you're like ten minutes away, because I'll stay in Fall
River until you're ten minutes away, then I'll shoot over and
give you the car."  At approximately 7:44 p.m., WARREN called
MELO and said he was five minutes away; MELO said he would be
there in ten minutes.

    25.  Shortly after this call occurred, surveillance agents
stationed at MELO's apartment at 54-60 Lafayette Street in Fall
River saw him exit the building, enter his car, which was parked

in the rear, remove a bag from the rear passenger compartment, and begin driving the Jeep towards his parents' house at 148 Davis Road in Westport. Approximately five minutes later, surveillance agents saw WARREN sitting in his red Mercury Grand Marquis at the Cumberland Farms at the head of Davis Road. MELO drove past WARREN into the driveway of 148 Davis Road and parked; WARREN followed a few seconds later and did likewise.

26. The two men talked for a minute or two in the driveway. Then WARREN entered MELO's Jeep and drove directly to Dynasty Auto Body in Providence, Rhode Island. At approximately 8:16 p.m., while WARREN was still en route to Dynasty Auto Body, he called MELO and said, "I put the radio on, you got to get it fixed man, it sucks." They talked briefly about the radio, and MELO then asked, "Hey, what was the number on that?" which I believe was an inquiry about the price for the two kilograms of cocaine that WARREN was picking up. WARREN said, "Same thing," indicating the same price as for the two kilograms he sold MELO on July 11, 2003. MELO said, "For the deuce," meaning for both kilograms. WARREN said, "Uh, yep, five, four, they won't budge, really. They don't need me. You know what I mean." I believe WARREN meant that the suppliers of the kilograms of cocaine would not lower the price even if WARREN took four or five at a time because they are such big drug dealers that they do not need his business. MELO said, "I'll put it together right now," probably meaning he would get the money for the drugs together. WARREN

said, "I'm like ten away."

27.  WARREN arrived at Dynasty Auto Body at approximately 8:45 p.m. and parked outside an open bay of the garage.  WARREN exited his car, entered the garage, emerged a few moments later, and drove into the bay, at which point the garage door closed behind him.  Approximately five minutes later, the door opened, and WARREN backed out and parked on the street.  He then reentered the garage for a moment, got back into the Jeep, and drove directly back to 148 Davis Road.  At approximately 9:02 p.m., while WARREN was still en route back to 148 Davis Road, MELO received a call from WARREN and said, "What's happening, pal?"  WARREN said he was ten minutes away.

28.  Approximately ten minutes later, surveillance agents observed WARREN drive MELO's Jeep into the driveway of 148 Davis Road.  MELO emerged from the house to greet WARREN, and both men were arrested.  Agents searched the Jeep and located a hydraulically powered, electronically activated hidden compartment or "hide" directly behind the rear seat of the Jeep. Inside the hide, agents found two packages, each containing a white substance in the shape of a brick that the agents recognized as cocaine.

29.  Based upon the foregoing, and based upon my training and experience, there is probable cause to believe that JOHN MELO and GREGORY WARREN have knowingly and intentionally conspired with each other and with others to distribute and to possess with

intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 United States Code, Sections 846, 841(a)(1) & 841(b)(1)(A).

I, having signed this affidavit under oath, as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information and belief.

MICHAEL H. KOZAK
Special Federal Officer
Federal Bureau of Investigation

Sworn to before me on
this 23rd day of July, 2003.

LAWRENCE P. COHEN
UNITED STATES MAGISTRATE JUDGE

%JS-45 (5/97) - (Revised USAO MA 3/25/02)

**Criminal Case Cover Sheet**       **U.S. District Court - District of Massachusetts**

**Place of Offense:**       Category No. __II____       Investigating Agency __FBI_____

**City** __Fall River_____       **Related Case Information:**

**County** __Plymouth_____
Superseding Ind./ Inf. _____    Case No. _____
Same Defendant _____    New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:** $\mathcal{JOHN}$

Defendant Name __~~JONATHAN~~ MELO_____       Juvenile   ☐ Yes   ☒ No

Alias Name _____

Address __54-60 Lafayette Street, Fall River, Massachusetts_____

Birth date: _____ SS#: _____ Sex: _M_ Race: __White_____ Nationality: __USA_____

**Defense Counsel if known:** _____    **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA** __William D. Weinreb_____       **Bar Number if applicable** _____

**Interpreter:**   ☐ Yes   ☒ No       **List language and/or dialect:** _____

**Matter to be SEALED:**    ☐ Yes   ☒ No

      ☐ **Warrant Requested**       ☐ **Regular Process**       ☒ **In Custody**

**Location Status:**

**Arrest Date:** __July 23, 2003_____

☐ **Already in Federal Custody as** _____ **in** _____ .
☐ **Already in State Custody** _____   ☐ **Serving Sentence**   ☐ **Awaiting Trial**
☐ **On Pretrial Release:**    **Ordered by** _____ **on** _____

**Charging Document:**    ☒ **Complaint**       ☐ **Information**       ☐ **Indictment**

**Total # of Counts:**    ☐ **Petty** _____    ☐ **Misdemeanor** _____    ☒ **1 Felony** _____

Continue on Page 2 for Entry of U.S.C. Citations

☐    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

**Date:** __July 23, 2003_____       **Signature of AUSA:** _____

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number  (To be filled in by deputy** _____

**Name of Defendant     JOHN MELO** _____

### U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  21 U.S.C. § 846 | Conspiracy to distribute cocaine | 1 |
| Set 2 | | |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:** _____

_____

_____

_____

_____

§JS 45 (5/97) - (Revised USAO MA 3/25/02)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

**Place of Offense:**                Category No. <u>II</u>         **Investigating Agency** <u>FBI</u>

**City** <u>Fall River</u>            **Related Case Information:**

**County** <u>Plymouth</u>            Superseding Ind./ Inf. _____ Case No. _____
                                      Same Defendant _____ New Defendant _____
                                      Magistrate Judge Case Number _____
                                      Search Warrant Case Number _____
                                      R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name  <u>GREGORY WARREN</u>              Juvenile   ☐ Yes   ☒ No

Alias Name _____

Address   <u>59 Sprague Avenue, Cumberland, RI</u>

Birth date: <u>8-14-67</u>   SS#: <u>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</u>   Sex: <u>M</u>   Race: <u>White</u>      Nationality: <u>USA</u>

**Defense Counsel if known:** _____   **Address:** _____
                                                              _____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA**   William D. Weinreb _____   **Bar Number if applicable** _____

**Interpreter:**   ☐ Yes   ☒ No      **List language and/or dialect:** _____

**Matter to be SEALED:**   ☐ Yes   ☒ No

          ☐ **Warrant Requested**        ☐ **Regular Process**     ☒ **In Custody**

**Location Status:**

**Arrest Date:** <u>July 23, 2003</u>

☐ Already in Federal Custody as _____ in _____ .
☐ Already in State Custody _____ ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:   Ordered by _____ on _____

**Charging Document:**   ☒ Complaint      ☐ Information        ☐ Indictment

**Total # of Counts:**   ☐ Petty _____   ☐ Misdemeanor _____   ☒1 Felony _____

**Continue on Page 2 for Entry of U.S.C. Citations**

☐     I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
      accurately set forth above.

**Date:  July 23, 2003**        **Signature of AUSA:** _____

JS 45 (5/97) - (Revised USAO MA 3/25/02)  Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy _____

**Name of Defendant**   GREGORY WARREN _____

### U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 21 U.S.C. § 846 | Conspiracy to distribute cocaine | 1 |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____